**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**HERC RENTALS, INC.,**

**Plaintiff,**

**v.** **CASE NO.:**

**THOMAS JOHNSON,**

**Defendant.**
________________________________/

**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

HERC RENTALS, INC. ("Herc") files this Verified Complaint for injunctive and other relief (the "Complaint") against THOMAS JOHNSON ("Johnson"), a former employee of Herc, for Johnson's material and ongoing breaches of his valid and enforceable Employee Confidentiality and Non-Competition Agreement, misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA") and the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.001, *et seq.*, and breach of duty of loyalty to Herc.

Herc alleges as follows:

**JURISDICTION AND VENUE**

1. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. This Court has subject matter jurisdiction over the parties and this action pursuant to 28 U.S.C. § 1331, because it raises federal questions, specifically claims under the federal DTSA, 18 U.S.C. § 1836.

3. The Court has supplemental jurisdiction over the various state law claims set forth herein, pursuant to 28 U.S.C. § 1367, because they are so related to the federal claims that they form part of the same case or controversy.

4. As a condition of his employment with Herc, Johnson executed an Employee Confidentiality and Non-Competition Agreement ("Restrictive Covenants") on July 11, 2025. A true and correct copy of the Restrictive Covenants is attached as **Exhibit A**. Johnson waived personal jurisdiction when he executed the Restrictive Covenants. The Restrictive Covenants limit enforcement of the agreement exclusively to the "Twentieth Judicial Circuit, Lee County, Florida, the United States District Court for the Middle District of Florida." *Id.*, ¶ 5(a).

5. Johnson waived any challenge to personal jurisdiction. *Id.*, ¶ 5(a).

6. Venue is proper in this Court pursuant to the exclusive forum selection clause in the valid and enforceable Restrictive Covenants.

## PARTIES

7. Herc is a for-profit corporation incorporated under the laws of Delaware with its principal place of business in Bonita Springs, Florida.

8. Johnson is an individual residing at 100 Greer Drive, Chapel Hill, TN 37034.

## HERC'S BUSINESS AND LEGITIMATE BUSINESS INTEREST

9. For over 60 years, Herc has been a premier, full-service equipment rental company that provides customers with the equipment, services, and solutions they need to achieve optimal performance safely, efficiently, and effectively.

10. Herc continues to evolve and grow through technological innovations, expanding product offerings, and increasing its services and consultative solutions to support customers' projects and needs.

11. Herc operates throughout the United States and Canada, with 607 Herc-operated branches.

12. The global construction and industrial equipment industry is a multi-billion-dollar industry that is highly fragmented and driven by intense competition.

13. Herc distinguishes itself in numerous ways within the industry. For instance, Herc curates its rental model to support its customers and to meet their needs by expanding its proprietary digital ecosystem, providing national clients with a tailored account framework, and building and/or scaling its business throughout the United States and Canada.

14. Within its electronic databases, Herc stores its confidential information and/or trade secrets to ensure that its confidential information and/or trade secrets are protected.

15. Herc's confidential and/or proprietary information and/or trade secrets includes—among other things—(a) information identifying or tending to identify any of Herc's existing or prospective customers and vendors, including customer and

vendor lists; (b) Herc's intellectual property, methods, call or sales scripts, workflows, processes, procedures, concepts, inventions, recordings, advertising and promotional materials, computer programs, software, or code—whether or not protected under any law; (c) Herc's business and marketing plans, methods, services, procedures, and techniques; (d) Herc's financial information; (e) pending and completed sales information; (f) product pricing and costing information; (g) market analyses; (h) customer or vendor purchase or order histories; (i) historical data about product quotes given to current and prospective vendors; (j) financial forecasts and projections of Herc; and (k) any of the various electronic databases or operational systems that Herc utilizes and the data contained within those databases and systems.

16. Herc accumulated and distilled the confidential and/or proprietary information and/or trade secrets described above over years of operation, making this information extremely valuable. Herc maintains this information with strict secrecy.

17. Herc uses the confidential and/or proprietary information and/or trade secrets described above in connection with products and services used in, or intended for use in, interstate and/or foreign commerce through the purchase and sale of its products via the internet and shipped through the stream of commerce.

18. All of Herc's confidential and/or proprietary information and/or trade secrets derive independent economic value from not being generally known to the public and not being readily ascertainable by proper means and have been subject to efforts that are reasonable under the circumstances to maintain their secrecy.

19. Herc communicates its confidential and/or proprietary information, along with its trade secret information, to its employees—including Johnson—in confidence, with the expectation that its employees will use this information only in connection with their respective employment with Herc.

20. Over the years, Herc made significant efforts to protect its legitimate business interests including, but not limited to, entering into restrictive covenant agreements that include confidentiality, non-disclosure, non-competition, and/or non-solicitation provisions with certain employees. These measures are common and reasonable within the industry.

21. Herc also provides its employees, like Johnson, with Employee Handbook(s), which are updated from time to time. The Employee Handbook includes policies addressing the use and disclosure of Herc's confidential information and trade secrets (such as information about clients or vendors, business plans, tools, products, and strategy methods), unauthorized use of computers, theft of Herc's property, the appropriate business use of the internet and email system, and the safeguarding of customer and potential customer personal information.

22. Moreover, Herc protects its confidential and/or proprietary information by requiring that its employees use electronic credentials and passwords before they can connect to its electronic and cloud-based systems to access its confidential data, including customer and vendor lists and customer purchase and order history.

23. The confidential information described above includes Herc's trade secrets, which, if known to competitors, would cause Herc to lose the competitive

advantage afforded by this information. Herc expended substantial time, effort, money, and resources in developing and maintaining its trade secrets.

**JOHNSON'S EMPLOYMENT WITH HERC**

24. On or around July 11, 2025, Herc hired Johnson as a Territory Sales Representative.

25. As a Territory Sales Representative, Johnson was responsible for driving sales growth, identifying and generating new customer leads, and servicing existing customer accounts within an assigned geographic region.

26. As a Territory Sales Representative, Johnson had access to Herc's customer and vendor lists, which included customer names, contact information, and sales history.

27. To perform his job duties, Johnson had access to Herc's databases containing the detailed historical data about Herc's various customers and vendors, which included information identifying, or tending to identify any of Herc's existing customers, calls or sale scripts, workflows, processes, promotional materials, financial information related to customer sales history, including pending and completed sales information, product pricing and costing information, order histories, and other historical data.

28. As a condition of his employment with Herc, Johnson signed the Restrictive Covenants. *See* **Exhibit A**.

29. The Restrictive Covenants state in relevant part:

3. CONFIDENTIALITY: UNFAIR COMPETITION

(a) The Employee recognizes and acknowledges that the business of the Company is highly specialized and competitive and that during the course of Employee's relationship with the Company, Employee will have access to significant proprietary and confidential information and trade secrets belonging to the Company. Employee acknowledges that but for Employee's position in the Company, Employee would not have such access to the Company's proprietary and confidential information and trade secrets. Employee acknowledges and agrees that such information has and will be provided to Employee so that Employee can perform Employee's duties, that such information provides the Company with a substantial business and competitive advantage and that release of such information to unauthorized persons or entities would be detrimental to the business of the Company and would provide an unfair competitive advantage to such unauthorized persons or entities. Employee specifically acknowledges that such information (as more fully defined below) has been compiled over a substantial period of time and at great cost and expense to the Company. The Employee therefore covenants and agrees, for the duration of this Agreement and at all times following its termination, that Employee will not use or disclose (other than in furtherance of the Company's business interests during the term of this Agreement and as authorized by the Company) any confidential or proprietary information and trade secrets of the Company, including, but not limited to, customer and supplier lists, customer or prospect information, pricing information, business plans, business development plans and other strategic plans or information, contract and negotiation strategies, Company reports and analyses, Company processes, techniques and systems used or considered for use, Company financial records, sales and marketing information, patents, patent rights, inventions, trademark or trade name rights, copyrights and other intellectual property rights, techniques, know-how and trade secret information, plans or information regarding the Company's future products and services and other business and financial information of or relating to the Company or its customers (collectively, the "Confidential Information"). Employee understands that such Confidential Information was disclosed to Employee in confidence and for use solely in connection with the business of the Company, and Employee agrees to retain all such information in trust for the sole benefit of the Company. The Employee further agrees that the Company has expended considerable time, effort and expense in assembling and maintaining such information and that such information constitutes both (i) trade

secret and/or confidential and proprietary information of the Company and (ii) part of the Company's goodwill.

(b) During the term of this Agreement and Employee's employment by the Company, and for a period of one (1) year after the termination of Employee's employment with the Company, whether said termination was voluntary or involuntary, the Employee shall not, without the prior written consent of the Company, directly or indirectly, whether as a principal, agent, officer, director, partner, employee, consultant, independent contractor or in any other capacity whatsoever, alone or in association with any other person or entity, be employed or retained by, own, manage, operate, control, partner with, be associated with, render services or assistance to, or own, share in the earnings of, or invest in the stocks, bonds or other securities of any business, firm, corporation or institution that is directly or indirectly in competition with the Company within one hundred (100) miles of the Company branch, location, or office(s) where Employee worked or was employed, or provided support or services, or within the geographic scope of Employee's responsibilities at the time of Employee's termination and during the twelve (12) month period preceding termination.

* * * *

For purposes of this Agreement, the phrase "competition with the Company", "competitive business" and "competitor" shall be defined as: (1) United Rentals, Sunbelt Rentals, Ahern Rentals, H&E Equipment Services, Sunstate Equipment Co., Blueline Rental, Cat Rental Stores (Caterpillar), **Synergy Equipment**, Platinum Equity, Studio Services, Star Rentals, Aggreko, Enterprise Truck Rentals, Barco Rent a Truck and Home Depot Rentals; (2) any person, company or entity **engaged in the business of renting or selling general, construction, industrial, entertainment or remediation equipment and/or services and equipment-related solutions, including equipment for rent or sale contained on the Company's website (www.hercrentals.com)**, in any of the Company's printed rental solutions guides or on Herc Rentals© applications, available for smartphones and tablets on various operating systems;

* * * *

(c) Employee acknowledges and agrees that but for Employee's employment with the Company, Employee would not have had access to the Company's customers, customer contacts and information and other Confidential Information and related goodwill as set forth above. Accordingly, Employee agrees that during the term of this Agreement,

> and for a period of one (1) year following the termination of the Employee's employment with the Company, whether said termination was voluntary or involuntary, the Employee shall not, as a principal, proprietor, director, officer, partner, shareholder, employee, member, manager, consultant, agent, independent contractor or in any other capacity, on behalf of Employee or on behalf of any other person, company or entity other than the Company, directly or indirectly;
>
> (i) Solicit or attempt to solicit, call upon, contact, communicate with, or accept directly or by assisting others, any competitive business as described above from any current or prospective customers of the Company whom the Employee came to know, came to service, had material contact with or came to learn the identity of or about whom Employee had Confidential Information while Employee was employed by the Company;
>
> * * * *
>
> (iii) Aid, assist or counsel any other person, firm, corporation, entity or the like to do any of the above.

*Id.*, ¶ 3 (emphasis added).

30. Herc's legitimate business interests supporting the Restrictive Covenants include, but are not limited to, the confidential and/or proprietary information and/or trade secrets it shared with Johnson; its market share within the industry; its relationships with identifiable customers, prospective customers, vendors, prospective vendors, and employees; and Herc's reputation and goodwill in the industry.

31. As a Territory Sales Representative, Johnson serviced customers and prospective customers in the Nashville, Tennessee area.

32. Herc placed significant trust and confidence in Johnson as a Territory Sales Representative.

33. On or around July 17, 2026, Johnson voluntarily terminated his employment with Herc. Johnson informed Herc that he was accepting employment in

Georgia, outside of the restricted area, in purported compliance with his Restrictive Covenants.

**Johnson's Employment with Synergy and Breach of his Restrictive Covenants**

34. Shortly after Johnson's separation from Herc, Herc discovered that Johnson had accepted employment with and/or begun working for a direct competitor, Synergy Rents, LLC/Opifex, LLC ("Synergy").

35. Synergy was founded in 2012 and is a construction equipment rental company serving the Southeastern United States, including Nashville, Tennessee.[1]

36. Synergy is a direct competitor to Herc.

37. On July 20, 2026, Herc sent Johnson correspondence reminding him of his post-employment obligations under the Restrictive Covenants.

38. Upon discovering Johnson's employment with Synergy, Herc conducted a forensic investigation of Johnson's company devices.

39. The forensic investigation revealed that Johnson had misappropriated Herc's confidential information and trade secrets, including customer and/or vendor lists.

40. On July 12, 2026—several days before ending his employment with Herc—Johnson emailed Herc's confidential information and trade secrets, in the form

[1] Synergy's website identifies all locations it services and identifies Nashville, Tennessee. See https://www.synergyequip.com/locations.

of a customer list, from his company email account to his personal email address "tommyjohn4424@gmail.com."

41. The investigation further revealed that Johnson solicited and/or attempted to solicit Herc customers on the confidential customer list that he misappropriated immediately after beginning his employment with Synergy.

42. The customers Johnson solicited and/or attempted to solicit were part of Herc's portfolio of customers that it spent years developing and maintaining a relationship with well before Johnson began his employment with Herc.

43. Johnson would not have had access to the solicited customers without his employment with Herc and his access to Herc's confidential information and/or trade secrets, including the misappropriated customer list.

44. Additionally, the customers that Johnson solicited were located in the Nashville, Tennessee area—and not in Georgia where he claimed he was working.

45. Johnson had no legitimate business reason to take or use the misappropriated confidential information and/or trade secrets belonging to Herc after the end of his employment with Herc.

46. Johnson knew or should have known that he materially violated his Restrictive Covenants with Herc when he misappropriated confidential information and/or trade secrets, violated the non-competition terms of his Restrictive Covenants, and used the misappropriated confidential information and/or trade secrets to solicit or attempt to solicit Herc's customers in the Nashville, Tennessee area.

47. Herc continues to investigate the full extent of Johnson's unlawful conduct and reserves the right to amend the Complaint based on any new information or evidence discovered throughout the investigation and discovery.

48. As a direct result of Johnson's actions, Herc has suffered economic damages, including—but not limited to—diminished sales, lost business opportunities, and loss of market share with its various customers.

**COUNT I – MISAPPROPRIATION OF TRADE SECRETS – DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836**

49. Herc realleges and incorporates paragraphs 1 - 48, as if fully set forth herein.

50. While employed with Herc, Johnson had access to Herc's confidential information, including—but not limited to—information identifying or tending to identify any of Herc's existing or prospective customers and vendors; Herc's intellectual property, methods, call or sales scripts, workflows, processes, procedures, concepts, inventions, recordings, advertising and promotional materials, computer programs, software—whether or not protected under any law; Herc's business and marketing plans, methods, services, procedures, and techniques; Herc's financial information, pending and completed sales information, product pricing, market analyses, product costing, customer or vendor purchase or order histories, product quotes, financial forecasts and projections of Herc, and any of the various electronic or operational systems.

51. Herc expended substantial time, effort, money, and resources in developing and maintaining its confidential information.

52. Herc takes reasonable, affirmative measures to maintain the confidentiality of this information for its exclusive benefit and competitive advantage in the industry.

53. This confidential information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

54. This confidential information constitutes trade secrets subject to protection under the DTSA, 18 U.S.C. § 1832.

55. Herc's trade secrets relate to a product or service used in, or intended for use in, interstate or foreign commerce.

56. By signing his Restrictive Covenants, Johnson knew he had a duty to maintain the secrecy of, and not disclose or misappropriate Herc's trade secrets for his own benefit or for the benefit of another to the detriment of Herc, and a duty to return any trade secrets in his possession, custody, or control upon his separation from Herc.

57. Johnson had actual knowledge that the information he obtained during his employment with Herc was Herc's trade secrets.

58. Johnson purposefully and wrongfully misappropriated and/or disclosed Herc's trade secrets and used the trade secrets, without Herc's knowledge or express

or implied consent, to advance his own pecuniary interest and those of his new employer, Synergy, in violation of the Restrictive Covenants and the DTSA.

59. Johnson misappropriated Herc's trade secrets, or appropriated them without authorization, by taking them for purposes not authorized by his Restrictive Covenants with Herc.

60. Johnson misappropriated Herc's trade secrets, or appropriated them without authorization, by taking them after his employment with Herc ended, and failing to return them when his employment ended.

61. Upon information and belief, Johnson disclosed Herc's trade secrets to Synergy.

62. Johnson's misappropriations were, and continue to be, willful and malicious.

63. Johnson continues to use Herc's confidential or proprietary information or trade secrets, or documents or information derived therefrom, for his personal benefit and, upon information and belief, for the benefit of his new employer, Synergy.

64. Unless this Court permanently restrains and enjoins Johnson from using the subject trade secrets, Herc will suffer irreparable injury, as Johnson will continue to have access to and the ability to use Herc's trade secrets for financial gain.

65. As a direct and proximate result of the misappropriation of Herc's trade secrets, Herc has suffered, and will continue to suffer, irreparable harm and economic damages, including—but not limited to—disruption of business, lost revenues and profits, incidental and consequential damage, actual loss caused by misappropriation and the

unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.

66. Herc has retained the Ogletree Deakins firm to represent it in this action and is entitled to recover reasonable attorneys' fees and litigation costs to the full extent allowed under the law.

WHEREFORE, Herc respectfully requests that this Court:

(a) Enter a permanent injunction prohibiting Johnson's and Synergy's use and disclosure of Herc's trade secrets;

(b) Enter judgment in favor of Herc and against Johnson;

(c) Award Herc damages, to include actual damages, lost revenues and profits, incidental and consequential damages, any other losses attributable to the misappropriations, and unjust enrichment;

(d) Award Herc its attorneys' fees and costs as permitted by the DTSA;

(e) Award Herc exemplary damages as permitted by law;

(f) Award Herc prejudgment interest; and

(g) Grant such other and further relief as this Court deems just and proper.

**COUNT II – MISAPPROPRIATION OF TRADE SECRETS – FLORIDA UNIFORM TRADE SECRETS ACT**

67. Herc realleges and incorporates paragraphs 1 - 48, as if fully set forth herein.

68. While employed with Herc, Johnson had access to Herc's confidential information, including—but not limited to—information identifying or tending to identify any of Herc's existing or prospective customers and vendors; Herc's

intellectual property, methods, call or sales scripts, workflows, processes, procedures, concepts, inventions, recordings, advertising and promotional materials, computer programs, software—whether or not protected under any law; Herc's business and marketing plans, methods, services, procedures, and techniques; Herc's financial information, pending and completed sales information, product pricing, market analyses, product costing, customer or vendor purchase or order histories, product quotes, financial forecasts and projections of Herc, and any of the various electronic or operational systems.

69. Herc expended substantial time, effort, money, and resources in developing and maintaining its confidential information.

70. Herc takes reasonable, affirmative measures to maintain the confidentiality of this information for its exclusive benefit and competitive advantage in the industry.

71. This confidential information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

72. This confidential information qualifies as Herc's trade secrets as defined by the FUTSA.

73. Herc's trade secrets relate to a product or service used in, or intended for use in, interstate or foreign commerce.

74. By signing his Restrictive Covenants, Johnson knew he had a duty to maintain the secrecy of, and not disclose or misappropriate Herc's trade secrets for his own benefit or for the benefit of another to the detriment of Herc, and a duty to return any trade secrets in his possession, custody, or control upon his separation from Herc.

75. Johnson had actual knowledge that the information he obtained during his employment with Herc was Herc's trade secrets.

76. Johnson purposefully and wrongfully misappropriated and/or disclosed Herc's trade secrets and used the trade secrets, without Herc's knowledge or express or implied consent, to advance his own pecuniary interest and those of his new employer, Synergy, in violation of the Restrictive Covenants and the FUTSA.

77. Johnson misappropriated Herc's trade secrets, or appropriated them without authorization, by taking them for purposes not authorized by his Restrictive Covenants with Herc.

78. Johnson misappropriated Herc's trade secrets, or appropriated them without authorization, by taking them after his employment with Herc ended, and failing to return them when his employment ended.

79. Upon information and belief, Johnson disclosed Herc's trade secrets to Synergy.

80. Synergy confirmed Johnson's misappropriation and disclosure of Herc's trade secrets in written correspondence dated September 10, 2026, in purported violation of Synergy's direction.

81. Johnson's misappropriations were, and continue to be, willful and malicious.

82. Johnson continues to use Herc's confidential or proprietary information or trade secrets, or documents or information derived therefrom, for his personal benefit and, upon information and belief, for the benefit of his new employer, Synergy.

83. Unless this Court permanently restrains and enjoins Johnson from using the subject trade secrets, Herc will suffer irreparable injury, as Johnson will continue to have access to and the ability to use Herc's trade secrets for financial gain.

84. As a direct and proximate result of the misappropriation of Herc's trade secrets, Herc has suffered, and will continue to suffer, irreparable harm and economic damages, including—but not limited to—disruption of business, lost revenues and profits, incidental and consequential damage, actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.

85. Herc has retained the Ogletree Deakins firm to represent it in this action and is entitled to recover reasonable attorneys' fees and litigation costs to the full extent allowed under the law.

WHEREFORE, Herc respectfully requests that this Court:

(h) Enter a permanent injunction prohibiting Johnson's and Synergy's use and disclosure of Herc's trade secrets;

(i) Enter judgment in favor of Herc and against Johnson;

(j) Award Herc damages, to include actual damages, lost revenues and profits, incidental and consequential damages, any other

losses attributable to the misappropriations, and unjust enrichment;

(k) Award Herc its attorneys' fees and costs as permitted by the FUTSA;

(l) Award Herc exemplary damages as permitted by law;

(m) Award Herc prejudgment interest; and

(n) Grant such other and further relief as this Court deems just and proper.

**COUNT III – BREACH OF CONTRACT – DISCLOSURE OF CONFIDENTIAL INFORMATION**

86. Herc realleges and incorporates paragraphs 1 through 46, as if fully set forth herein.

87. Johnson's Restrictive Covenants constitute a valid and enforceable restrictive covenant agreement. *See* **Exhibit A**.

88. Johnson's Restrictive Covenants prohibit him from disclosing or using any confidential information, except as required in the course of his employment with Herc. These restrictions applied to Johnson during his employment with Herc and following his separation of employment.

89. Herc fully performed its obligations under the Restrictive Covenants.

90. Johnson knowingly, intentionally, and materially breached the terms of his Restrictive Covenants by, among other things, misappropriating Herc's confidential information and trade secrets and using such confidential information and trade secrets to advance his own pecuniary interests and/or the pecuniary interests of Synergy.

91. Johnson's material breach was confirmed by his new employer, Synergy, in written correspondence dated September 10, 2026, in purported violation of the directive of his new employer.

92. Johnson's unlawful acts are ongoing.

93. As a direct and proximate result of Johnson's breach of the Restrictive Covenants, Herc has suffered, and will continue to suffer, irreparable harm and economic damages.

94. The Restrictive Covenants provide for the recovery of attorneys' fees and costs incurred when enforcing the agreement. *Id.*, ¶ 3(e).

95. Herc has retained the Ogletree Deakins firm to represent it in this action and is entitled to recover reasonable attorneys' fees and litigation costs to the full extent allowed under the law and the terms of the Restrictive Covenants.

WHEREFORE, Herc respectfully requests that this Court:

(a) Enter a permanent injunction prohibiting Johnson from violating the terms of his Restrictive Covenants as they relate to Herc's confidential and/or proprietary information;

(b) Enter judgment in favor of Herc and against Johnson;

(c) Award Herc actual damages, and its costs and attorneys' fees incurred in prosecuting this action;

(d) Award Herc prejudgment interest; and

(e) Grant such other and further relief as this Court deems just and proper.

**COUNT IV – BREACH OF CONTRACT – NON-COMPETITION**

74. Herc realleges and incorporates paragraphs 1 through 46, as if fully set forth herein.

75. Johnson's Restrictive Covenants constitute a valid and enforceable restrictive covenant agreement. *See* **Exhibit A**.

76. Johnson's Restrictive Covenants prohibited him, during his employment with Herc and for a 1-year period following his separation from Herc, directly or indirectly from being employed, retained by, own, manage, operate, control, partner with, be associated with, render services or assistance to, or be a principal, agent, officer, director, partner, employee, consultant, or in any other capacity, to a competitor, whether directly or indirectly within 100 miles of the geographic scope where Johnson was employed or provided services to. *Id.*, ¶ 3(b).

77. Johnson was employed by Herc as a Territory Sales Representative for the Nashville, Tennessee area.

78. Herc fully performed its obligations under the Restrictive Covenants.

79. Johnson knowingly, intentionally, and materially breached the terms of his agreement by, among other things, going to work for Synergy, in violation of the terms of the Restrictive Covenants.

80. Johnson's unlawful conduct is ongoing.

81. As a direct and proximate result of Johnson's breach of his contract, Herc has suffered, and will continue to suffer, irreparable harm and economic damages.

82. The Restrictive Covenants provide for the recovery of attorneys' fees and costs incurred when enforcing the agreement. *Id.*, ¶ 3(e).

83. Herc has retained the Ogletree Deakins firm to represent it in this action and is entitled to recover reasonable attorneys' fees and litigation costs to the full extent allowed under the law and the terms of the Restrictive Covenants.

WHEREFORE, Herc respectfully requests that this Court:

(a) Enter a permanent injunction prohibiting Johnson from violating the terms of his Restrictive Covenants as it relates to competition;

(b) Enter judgment in favor of Herc and against Johnson;

(c) Award Herc actual damages, and its costs and attorneys' fees incurred in prosecuting this action;

(d) Award Herc prejudgment interest; and

(e) Grant such other and further relief as this Court deems just and proper.

**<u>COUNT V – BREACH OF CONTRACT – NON-SOLICITATION</u>**

74. Herc realleges and incorporates paragraphs 1 through 48, as if fully set forth herein.

75. Johnson's Restrictive Covenants constitute a valid and enforceable restrictive covenant agreement. *See* **Exhibit A**.

76. Johnson's Restrictive Covenants prohibit him from soliciting, attempting to solicit, calling upon, contacting, communicating with, or accepting directly or by assisting a direct competitor business from any current or prospective customer with whom Johnson had material contact while employed with Herc and/or whose identity

Johnson discovered through Herc's confidential information and/or trade secrets. *Id.*, ¶ 3(c).

77. Johnson knowingly, intentionally, and materially breached the terms of his agreement by attempting to solicit and/or purposely contacting Herc's customers in violation of the Restrictive Covenants.

78. Johnson has no known personal relationship with Herc's customers, other than the business relationship he developed with such customers during his employment with Herc.

79. Johnson purposely attempted to solicit Herc customers on the confidential list that he misappropriated for his own benefit and, upon information and belief, for the benefit of his new employer, Synergy.

80. As a direct and proximate result of Johnson's breach of his contract, Herc has suffered, and will continue to suffer, irreparable harm and economic damages.

84. The Restrictive Covenants provide for the recovery of attorneys' fees and costs incurred when enforcing the agreement. *Id.*, ¶ 3(e).

85. Herc has retained the Ogletree Deakins firm to represent it in this action and is entitled to recover reasonable attorneys' fees and litigation costs to the full extent allowed under the law and the terms of the Restrictive Covenants.

WHEREFORE, Herc respectfully requests that this Court:

(f) Enter a permanent injunction prohibiting Johnson from violating the terms of his Restrictive Covenants as it relates to solicitation;

(g) Enter judgment in favor of Herc and against Johnson;

(h) Award Herc actual damages, and its costs and attorneys' fees incurred in prosecuting this action;

(i) Award Herc prejudgment interest; and

(j) Grant such other and further relief as this Court deems just and proper.

## COUNT VI – BREACH OF DUTY OF LOYALTY

86. Herc realleges and incorporates paragraphs 1 through 48, as if fully set forth herein.

87. Johnson owed Herc a duty of loyalty. Johnson had fiduciary duties of loyalty to Herc not to use his position and his access to Herc's confidential information and trade secrets for his own personal benefit or the benefit of other companies, such as Synergy, and/or to hinder Herc's ability to succeed in its business operations.

88. Johnson, through his position as Territory Sales Representative, formed relationships with Herc's actual and prospective customers, along with having access to Herc's confidential and/or proprietary information.

89. Johnson's position as Territory Sales Representative required a high degree of trust and confidence from Herc; Johnson was aware of the trust and confidence Herc extended to him and voluntarily accepted it.

90. Johnson breached his duty of loyalty to Herc by misappropriating confidential information and/or trade secrets, and using Herc's confidential information and trade secrets to solicit or attempt to solicit Herc's customers to Synergy.

91. Johnson's misconduct constitutes a breach of his duty of loyalty.

92. As a proximate result of Johnson's disloyal conduct, Herc suffered and will continue to suffer damages, including punitive damages.

WHEREFORE, Herc respectfully requests that this Court:

(a) Enter judgment in favor of Herc and against Johnson;

(b) Award Herc actual damages, compensatory damages, and punitive damages, and costs incurred in prosecuting this action;

(c) Award Herc its prejudgment interest; and

(d) Grant such other and further relief as this Court deems just and proper.

DATED: October 16, 2026.

Respectfully submitted,

*/s/ Caren S. Marlowe*
Caren S. Marlowe, Esq.
Florida Bar No.: 514586
caren.marlowe@ogletree.com
Marielly Abzun, Esq.
Florida Bar No.: 1011245
marielly.abzun@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
100 North Tampa Street, Suite 3600
Tampa, Florida 33602
Telephone: (813) 289-1247
Facsimile: (813) 289-6530
Secondary E-mail:
melissa.salazar@ogletree.com;
TAMdocketing@ogletree.com
*Attorneys for Plaintiff, HERC RENTALS, INC.*